UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., <br><br> Interpleader-Plaintiff, <br><br> - against - <br><br> PENNANTPARK FLOATING RATE CAPITAL LTD.; NPS HOLDING GROUP, LLC; AEONION ALLIANCE INVESTMENTS, LLC; NPS DEBT ACQUISITION, LLC; JOSEPH SCOTT MURPHY A/K/A SCOTT MURPHY; CHRISTOPHER T. OLSON, <br><br> Interpleader-Defendants, | Case No.:   26- |

## <u>CIVIL ACTION COMPLAINT FOR INTERPLEADER</u>

Interpleader-Plaintiff, National Union Fire Insurance Company of Pittsburgh, PA., ("National Union" and/or "Interpleader-Plaintiff"), on its own behalf and on behalf of its affiliated companies (the "Affiliated Companies") that issued the insurance policies listed on **Exhibit A**, by its attorneys, Zeichner Ellman & Krause LLP, for its Interpleader Complaint, alleges upon information and belief as follows:

## <u>INTRODUCTION</u>

1.      This an interpleader action brought pursuant to 28 U.S.C. §§ 1335, and 2361 by National Union against Interpleader-Defendants, PennantPark Floating Rate Capital, Ltd. ("PennantPark"), NPS Holding Group, LLC ("NPSHG"), Aeonion Alliance Investments, LLC, NPS Debt Acquisition, LLC, Joseph Scott Murphy A/K/A Scott Murphy; and Christopher T. Olson, (collectively, "Interpleader-Defendants").

2.      Interpleader-Plaintiff is currently holding an interim return amount of $800,000.00 ("Interim Return Amount") which is part of certain security for certain insurance policies that were issued to NPSHG and/or its predecessors.  The Interpleader-Defendants each may claim immediate entitlement to those same funds.  As further discussed below, none of the Interpleader-Defendants have provided Interpleader-Plaintiff with an unequivocal determination of entitlement to the funds currently held by Interpleader-Plaintiff.

3.      Consequently, as a result of the Interpleader-Defendants' potential and actual competing claims and an absence of any judgment or unequivocal determination of entitlement and/or ownership to the funds, Interpleader-Plaintiff cannot determine to whom the funds currently held are owed, and thus to whom such funds should be returned to, without hazard to itself. Accordingly, Interpleader-Plaintiff brings this action seeking a determination from the Court as to which individuals or entities may be entitled to the funds at issue.

## **PARTIES**

4.      At all relevant times, Interpleader-Plaintiff was and still is an insurance company authorized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 1271 Avenue of the Americas, New York, New York 10020. National Union and the Affiliated Companies are all wholly owned direct or indirect subsidiaries of American International Group, Inc.

5.      On information and belief, PennantPark is a corporation registered in Maryland, with offices at 2405 York Road, Suite 201, Lutherville Timonium MD 21093 and1350 Avenue of the Americas, 32nd Floor, New York, New York 10019.

6.      On information and belief, NPSHG is a limited liability company registered in Delaware with a last known registered agent being Capitol Services Inc., 1675 S. State Street, Suite B, Kent, Delaware.  Upon information and belief, this Interpleader-Complaint can be served upon Richard D'Amico as the last known President of NPSHG. Upon information and belief, this Interpleader-Complaint can be served upon Christopher T. Olson as the last known Chief Financial Officer of NPSHG.

7.      On information and belief, Aeonion Alliance Investments, LLC is a limited liability company, the registration information for which is unknown.  Upon information and belief, Aeonion Alliance Investments, LLC, through its Members Richard D'Amico and Joseph Scott Murphy A/K/A Scott Murphy, have indicated it claims entitlement to the funds at issue in this action. Upon information and belief, Aeonion Alliance Investments, LLC, may have a claim to the funds at issue in this action pursuant to a Tenth Amendment to Third Amended and Restated Note dated December 31, 2011.

8.      On information and belief, NPS Debt Acquisition, LLC, is a limited liability company registered in Delaware, with its registered agent being The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. Upon information and belief, NPS Debt Acquisition, LLC, may have a claim to the funds at issue in this action pursuant to a Tenth Amendment to Third Amended and Restated Note dated December 31, 2011.

9.      On information and belief, Joseph Scott Murphy A/K/A Scott Murphy is an individual with an address of 4405 Ivanhoe Walk, Cumming, Georgia 30040. On information and belief, he may have a claim to the funds at issue in this action pursuant to a Tenth Amendment to Third Amended and Restated Note dated December 31, 2011.

10.    On information and belief, Christopher T. Olson is an individual with an address of 2105 Mann Parkway, Celina, Texas 75009.  On information and belief, he may have a claim to the funds at issue in this action pursuant to a Tenth Amendment to Third Amended and Restated Note dated December 31, 2011.

## JURISDICTION AND VENUE

11.    This Court has original jurisdiction over this civil action under 28 U.S.C. 1335(a), and 2361 because the value of the funds exceeds $500 and two or more adverse claimants of diverse citizenship may claim entitlement to the funds.

12.    The Court has personal jurisdiction over each of the Defendants because 28 U.S.C. 2361 provides for nationwide service of process in federal statutory interpleader actions.

13.    Venue is proper in this District pursuant to 28 U.S.C. § 1397.  Pursuant to 28 U.S.C. 1397 any civil action of interpleader or in the nature of interpleader under 28 U.S.C. 1335 may be brought in the judicial district in which one or more of the claimants reside.  Interpleader-Defendant PennantPark maintains an office located at 1350 Avenue of the Americas, 32nd Floor, New York, New York 10019 in this District.

## FACTS COMMON TO ALL COUNTS

14.    Interpleader-Plaintiff issued automobile liability, general liability, and workers compensation and employers liability insurance policies to National Products Services, Inc., ("NPS") from 2002 to 2009, ("the "NPS Insurance Policies").

15.    In conjunction with the NPS Insurance Policies, Interpleader-Plaintiff and NPS executed one or more Payment Agreements for Insurance and Risk Management Services,

detailing the respective liabilities, obligations and rights of Interpleader-Plaintiff and NPS (the "NPS Payment Agreements"). Collectively, the NPS Insurance Policies and the NPS Payment Agreements are referred to as the "NPS Insurance Program". Pursuant to the "Insurance Program" and the Payment Agreements National Union is authorized to act on behalf of the Affiliated Companies.

16.     To secure its obligations under the NPS Insurance Program, NPS delivered to Interpleader-Plaintiff certain collateral amounts and forms, including but not limited to, letters of credit and cash collateral (the "NPS Security").

17.     On information and belief, on July 22, 2009, NPS completed a reorganization (the "NPS Reorganization") wherein certain assets and business units of NPS were sold to other NPS related corporate entities including NPSHG. Included in the NPS Reorganization was the sale of the NPS Insurance Program and the NPS Security from NPS to NPSHG.

18.     On information and belief, NPSHG served as a consolidator of several operating entities including all their assets and liabilities being consolidated under a single entity, We're Ready to Assemble, Inc., which was a wholly owned subsidiary of NPSHG.

19.     Effective July 22, 2009, NPSHG agreed to assume all the existing outstanding and future insurance debts, liabilities, and duties of NPS as such had been incurred under the NPS Insurance Program by entering into an assumption agreement with Interpleader-Plaintiff. ("Assumption Agreement").

20.     Contemporaneously with the Assumption Agreement, Interpleader-Plaintiff issued automobile liability, general liability, and workers compensation and employers liability insurance policies to NPSHG on July 22, 2009, which were thereafter renewed through 2012 (the

5

"NPSHG Insurance Policies"; together with the NPS Insurance Policies the "Insurance Policies").

A list of the Insurance Policies (or most of them) is annexed hereto as **Exhibit A**.

21.    In conjunction with the NPSHG Insurance Policies, Interpleader-Plaintiff and NPSHG executed a certain Payment Agreement for Insurance and Risk Management Services, effective July 22, 2009, detailing the respective liabilities, obligations and rights of Interpleader-Plaintiff and NPSHG (the "NPSHG Payment Agreement"; together with the NPS Payment Agreements, the "Payment Agreements").  Collectively, the NPSHG Insurance Policies and the NPSHG Payment Agreement are referred to as the "NPSHG Insurance Program"; together with the NPS Insurance Program, the "Insurance Programs".

22.    To secure its obligations under the NPSHG Insurance Program, NPSHG delivered to Interpleader-Plaintiff certain collateral amounts and forms, including but not limited to, letters of credit and cash collateral (the "NPSHG Security"; together with the NPS Security, the "Security").

23.    On information and belief and/or on information provided by PennantPark, on July 22, 2009, NPSHG as a borrower entered into a Third Amended and Restated Credit Agreement with certain lender parties and ING Capital LLC ("ING") as Administrative Agent for the lenders ("Credit Agreement").

24.    On information and belief and/or on information provided by PennantPark, in order to induce the lenders and ING to enter into the Credit Agreement, NPSHG entered into a Security Agreement ("Security Agreement") wherein NPSHG pledged and assigned to ING a security interest in and to, all right, title, and interest of NPSHG in and to all presently existing and hereafter acquired collateral, including the Security as collateral for the Insurance Programs.

6

25.    On information and belief and/or on information provided by PennantPark, on April 26, 2011, NPSHG assigned to MCG Capital Corporation ("MCG"), a portion of its rights and obligations under the Credit Agreement and other loan documents and ING assigned to MCG a portion of its rights and obligations under the Credit Agreement and other loan documents. ("Agency Transfer Agreement").

26.    On information and belief, on August 18, 2015, MCG was acquired by merger into PennantPark.

27.    Despite the Insurance Programs' policies expiring in 2012, obligations under the Payment Agreements remain, necessitating Interpleader-Plaintiff's requirement to retain the Security as collateral previously provided by NPS and NPSHG.

28.    Interpleader-Plaintiff has been approached by PennantPark alleging that NPSHG had defaulted on the Tenth Amendment to Third Amended and Restated Credit Agreement dated December 31, 2011, and the Security Agreement resulting in a debt to them totaling millions of dollars, and requesting that Interpleader-Plaintiff provide to PennantPark any Security from the Insurance Programs which Interpleader-Plaintiff no longer needs.

29.    Interpleader-Plaintiff has been advised by PennantPark that PennantPark holds no judgment nor conducted any foreclosure against NPSHG.  Further, Interpleader-Plaintiff has been advised by PennantPark that NPSHG is inactive, possibly dissolved, and for all intents and purposes no longer a going concern.

30.    PennantPark has provided to Interpleader-Plaintiff a draft affidavit which purports to assert that pursuant to Section 2.19 of the December 31, 2011, Tenth Amendment to

7

Third Amended and Restated Note, any remaining and excluded assets are to be distributed to MCG Capital Corporation, NPS Debt Acquisition, LLC, Aeoninon Alliance Investments, LLC, Scott Murphy, and Chris Olson.

31.    Interpleader-Plaintiff does not have a copy of the Tenth Amendment to Third Restated Note and Credit Agreement dated December 31, 2011, and is unable to confirm said allegations.  Accordingly, to the extent Interpleader-Plaintiff is aware that PennantPark, NPS Debt Acquisition, LLC, Aeonion Alliance Investments, LLC, Joseph Scott Murphy A/K/A Scott Murphy, and Christopher T. Olson may claim entitlement to the cash collateral, they have been included as Interpleader-Defendants.

32.    Interpleader-Plaintiff has determined that it does not require $800,000 of the funds it holds to continue to administer the Insurance Programs to conclusion. This amount may be returned to the proper party without delay.

33.    There may be additional funds to be returned to the prevailing Interpleader-Defendant in the future (the "Residual Amount").  When the Residual Amount, if any, is determined it will then be available to be returned.  If any dispute arises between Interpleader-Plaintiff and the prevailing Interpleader-Defendant in this action as to the Residual Amount, such dispute may only be resolved by arbitration pursuant to the Payment Agreements with such Interpleader-Defendant that is the prevailing party in this action.

34.    Interpleader-Plaintiff is now in a position to return the Interim Return Amount in the amount of $800,000.00, minus the costs and expenses of this proceeding.    Interpleader-Plaintiff requests this Court's assistance to conclusively establish the identity of the party or parties entitled to the Interim Return Amount.  Accordingly, Interpleader-Plaintiff seeks an Order from this

Court declaring the respective rights of Interpleader-Defendants with respect to the Interim Return Amount and the Residual Amount and directing and declaring to whom payment of such amounts should be made.

**COUNT I**
**CLAIM FOR INTERPLEADER**

35.    Interpleader-Plaintiff hereby incorporates by reference each of the averments in the above paragraphs as set forth herein at length.

36.    Interpleader-Plaintiff is an innocent and disinterested stakeholder and is unable to determine which individuals or entities may be entitled to the Interim Return Amount.

37.    Based on the foregoing, there is presently an actual, justiciable controversy between Interpleader Defendants as to their respective rights to the Interim Return Amount.

38.    Due to the adverse claims to the Interim Return Amount, Interpleader-Plaintiff is at risk of suffering competing claims and has a good-faith concern of potential multiple liability in connection with both the Interim Return Amount and the Residual Amount, if any.

39.    Unless the potentially adverse and conflicting claims to the Interim Return Amount are resolved in a single proceeding pursuant to an appropriate court order, Interpleader-Plaintiff is subject to risk of multiple litigations and risk of suffering multiple liability and/or inconsistent rulings as to its liability for the Interim Return Amount.

40.    Interpleader-Plaintiff is an innocent party and wishes to distribute the Interim Return Amount to the appropriate party or parties.

41.    Interpleader-Plaintiff is prepared to deposit the Interim Return Amount into the Court's registry upon order of this Court.

## COUNT II
## LEGAL FEES

42.    Interpleader-Plaintiff is entitled to an award of its costs and disbursements of this action along with its reasonable attorneys' fees, and that said costs, disbursements, and fees to be paid out of the Interim Return Amount.

**WHEREFORE**, Interpleader-Plaintiff asks that judgment of interpleader be entered in its favor and that:

1.    the Court orders Interpleader-Defendants to interplead and settle their respective rights and claims to the Interim Return Amount without further involvement of Interpleader-Plaintiff;

2.    the Court enjoins and restrains Interpleader-Defendants from commencing or further prosecuting any other proceedings in any state or United States Court against Interpleader-Plaintiff on account of the funds at issue in this action;

3.    the Interpleader-Plaintiff be fully and finally discharged and dismissed from this litigation and all liability in connection with and arising out of, or relating to this action, or the Interim Return Amount;

4.    the Court directs and declares the respective rights of Interpleader-Defendants between themselves with respect to the Interim Return Amount and the Residual Amount, and directs and declares to whom payment of the Interim Return Amount should be made;

5.      the Interpleader-Plaintiff be awarded its costs, disbursements, attorneys' fees, and all other proper costs and charges incurred in connection with this action, subtracting such amounts from the Interim Return Amount prior to its payment to the prevailing Interpleader-Defendant; and

6.      the Court award such other and further relief as it may deem just and proper.

Dated:   New York, New York
         July 13, 2026

ZEICHNER ELLMAN & KRAUSE LLP

By: /s/ Michael S. Davis
    Michael S. Davis
    *Attorneys for Interpleader-Plaintiff*
    *National Union Fire Insurance Company of*
    *Pittsburgh, PA*
    730 3rd Avenue
    New York, New York 10017
    (212) -826-5311

**To**:

PennantPark Floating Rate Capital, Ltd.
c/o The Corporation Trust Incorporated
2405 York Road, Suite 201
Lutherville Timonium, MD 21093

National Product Services Holding Group, LLC
c/o Richard J. D'Amico as last known President of NPS Holding Group, LLC
880 Lake Carolyn Pkwy, Apt. 235
Irving, Texas 75039

National Product Services Holding Group, LLC
c/o Christopher T. Olson as last known Chief Financial Officer of NPS Holding Group, LLC
2105 Mann Parkway
Celina, Texas 75009

NPS Debt Acquisition, LLC
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Aeonion Alliance Investments, LLC
c/o Richard J. D'Amico as Member of Aeonion Alliance Investments, LLC
880 Lake Carolyn Pkwy, Apt. 235
Irving, Texas 75039

Aeonion Alliance Investments, LLC
c/o Joseph Scott Murphy as Member of Aeonion Alliance Investments, LLC
4405 Ivanhoe Walk
Cumming, Georgia 30040

Christopher T. Olson
2105 Mann Parkway
Celina, Texas 75009


Joseph Scott Murphy A/K/A Scott Murphy
4405 Ivanhoe Walk
Cumming, Georgia 30040